Matter of David G. v Michelle G. (2007 NY Slip Op 51317(U))

[*1]

Matter of David G. v Michelle G.

2007 NY Slip Op 51317(U) [16 Misc 3d 1106(A)]

Decided on June 25, 2007

Family Court, Monroe County

Kohout, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 25, 2007

Family Court, Monroe County
In the Matter of David G., Petitioner
against
Michelle G., Respondent.
V-00585-01/06 I & J

Tynise Y. Edwards, Esq.
Assistant Conflict Defender
Attorney for Petitioner
David G.
Melvin G. Shapiro, Esq.
Attorney for Respondent
Michelle G.
Joseph G. Nesser, Esq.
Law Guardian

Joan S. Kohout, J.
The petitioner, David G., filed a petition by Order to Show Cause on September 15, 2006 requesting modification of an order suspending visitation made August 19, 2005 to permit visitation with his son Tylor G., born August 20, 1996. The respondent, Michelle G., filed a cross-petition on October 14, 2006 also requesting a modification of the order. Although Ms. G.'s cross-petition does not request specific relief, the cross-petition states: "Michelle and Tylor feel that it is not in the best welfare medically and physically for visits to continue w/ David G. Indefinilty [sic]".
A trial occurred on April 2, 2007, April 4, 2007 and April 30, 2007. The court also interviewed Tylor in chambers in the presence of his law guardian.
LEGAL BACKGROUND
The parties are the parents of a son Tylor, born August 20, 1996. They were divorced in December of 2000, at which time they agreed that sole custody of Tylor would be with Ms. G. [*2]and Mr. G. would have supervised visitation.
Since 2001 Mr. and Ms. G. have both filed numerous petitions regarding custody and visitation issues frequently resulting in a modification of prior orders. The first modification was agreed to on June 28, 2001 when Mr. G.'s visitation was expanded to every other weekend plus an evening during the week. On December 12, 2003 visitation was modified to three hours of visitation on Saturdays to be supervised by Tylor's paternal grandfather. On April 30, 2004 visitation was again expanded to every other weekend and one weekday evening visit.
The most recent order dated November 15, 2005 was made after a trial and suspended Mr. G.'s visitation with Tylor, directed that he attend an alcohol treatment program, speak to his son's doctor regarding his son's medical condition and could only petition the court upon proof that he had provided six months of "clean screens" to occur at least twice per week.
Historically, the parents have had difficulties in their relationship. There have been orders of protection between the parties in the past, including a stipulated three month Family Court order of protection relating to telephone calls made by Mr. G., which expired on January 4, 2007. Additionally, in 2001 Mr. G. was convicted of violating an order of protection.
During the course of these proceedings temporary orders of visitation were made providing three hours of supervised visitation weekly for Mr. G. and Tylor.
FINDINGS OF FACT
Four witnesses testified at the trial. Mr. G. and his mother, June Duvall, testified on behalf of Mr. G.Ms. G. testified on her own behalf and called one witness, Guy Kaplan. Additionally, the court interviewed Tylor in the presence of his attorney and found Tylor to be mature, articulate and insightful. Without doubt, Tylor loves both his parents and wishes them to be a significant part of his life.
Ms. Duvall, who testified with the assistance of an American Sign Language interpreter,
testified that she is often present when her son visits with Tylor. She observes them playing basketball, looking at pictures and interacting with each other. Mr. G. prepares dinner and it is obvious to Ms. Duvall that Tylor is happy during these visits. Although Ms. Duvall agreed that she is unable to understand verbal conversations that occur between Mr. G. and Tylor, she testified that Mr. G. signs and speaks at the same time and that Tylor knows a little sign language. Ms. Duvall did not the supervise any visits. The visits were supervised by Guy Kaplan.
Mr. G. testified that he would like to reinstate the overnight weekend visitation that was in effect before his visitation was suspended in November 2005. Specifically, he requests visitation from Saturday to Sunday plus a weekday visit.
Mr. G. testified regarding the supervised visits that have been in place under the temporary order. The visits started off at Greece Mall. During the visits at the mall, Tylor and his father would eat, go to Dick's Sporting Goods store, walk around and sometimes shoot basketball.
In addition to going to the mall, Tyler and Mr. G. have gone bowling, gone to Mr. G.'s girlfriend's house and to Mr. G.'s home. Tylor has visited with his cousins, grandparents and Mr. G.'s girlfriend.
Tylor suffers from Ollier's Disease, which makes him susceptible to bone fractures. As a result of his medical condition, Tylor has had multiple surgeries and sustained broken bones while in the care of each parent. The most recent fracture was a broken femur in August 2006, [*3]which occurred while Tylor was in his mother's care.
In January 2004 during a visit with his father, Tylor was in a sledding accident, a fact that contributed to the order suspending Mr. G.'s visitation. At that time, the court found that the use of alcohol had played a part in Mr. G.'s exercise of poor judgment in permitting his son to go sledding.
Mr. G. testified that he has spoken with his son's doctor and physical therapist regarding restrictions on Tylor's activities because of Ollier's Disease. Although Tylor should not participate in full contact sports, no doubt due the risk of injury, he participates in other physical activities including baseball.
Mr. G. also testified that he has attended alcohol treatment and that he does not see alcohol use as a problem. He testified that he rarely drinks and has not consumed alcohol in front of his son.
Ms. G. briefly testified that she has monitored Tylor's phone conversations with his father since January 2007. Most of the time, Mr. G. calls Tylor and sometimes Tylor calls his father. During these conversations, Ms. G. has overheard Mr. G. refer to the case in court. Ms. G. stated that she believes visits should be supervised and that Tylor is not in a safe environment when he visits his father. She did not give reasons for these conclusions.
Guy Kaplan testified that he has been the supervisor for Mr. G.'s visit since before Christmas 2006. There have been visits at Mr. G.'s house and visits at Greece Mall. After one visit on an unknown date, Mr. Kaplan observed Tylor crying. Mr. Kaplan heard Mr. G. tell Tylor that he would take him ice fishing or snowmobiling. Mr. Kaplan did not testify to any incidents that posed a risk to Tylor's safety.
No medical or other expert testimony was presented and no medical records concerning Tylor's medical condition were offered into evidence.
Discussion
In order for an order of visitation to be modified, the petitioning party prove that there has been a substantial change of circumstances since the last order and modification of that order would promote the child's best interest (see Matter of Fish v. Manning, 300 AD2d 932, 933 [3rd Dept 2002]; Family Court Act §651[b]). The focus must be on the child's best interest taking into account that visitation is a right shared by both the parent and child (see Weiss v.Weiss, 52 NY2d 170, 175 [1981]).
Generally, parent-child visitation is presumed to be in the child's best interest. Visitation may only be suspended or denied upon a showing of extraordinary circumstances that visitation would be detrimental to the child (see Matter of Nancy M.v. Brian M., 227 AD2d 404 [2nd Dept 1996]; see also Chirumbolo v. Chirumbolo, 75 AD2d 992 [4th Dept 1980]).
Contrary to the view of the law guardian, the prior order does not and cannot place prerequisites to the filing of this modification petition. While Family Court may in a proper case order that a party participate in therapy as part of a comprehensive visitation plan, it may not order that a parent undergo therapy as a condition to filing a petition in the future (see Matter of Grassi v. Grassi, 28 AD3d 482,483 [2nd Dept 2006] citations omitted). Nor can the submission of proof of six months of "clean screens" serve as a precondition to the father's request to reinstate his access to his son (see Matter of Grassi v. Grassi, 28 AD3d at 483 where it was error [*4]for the Family Court to bar a parent from petitioning for visitation unless she showed that "she has maintained sobriety for a significant period of time").
Both parents are gravely concerned about Tylor's medical condition. Although no medical proof was presented regarding Ollier's Disease, the record indicates that Tylor's bones are brittle and susceptible to fracture.[FN1] Despite his condition, Tylor is able to participate in sports, Boy Scouts and school activities. Both parents recognize that Tylor requires supervision in his activities in order to avoid injuries. Despite their differences on other issues, Mr. and Ms. Grimies clearly wish Tylor to have as normal a childhood as possible.
After considering the totality of the proof and circumstances presented at the trial, the court finds that the petitioner has proven that there has been a substantial change of circumstances since the last court order and that it is consistent with Tylor's best interest to reinstate visitation. Tylor is now older, his father is more knowledgeable about Tylor's medical condition and Mr. G. has participated in over six months of supervised visitation without incident. Additionally, Mr. G. has attended Boy Scouts and other activities with Tylor, including his baseball practices and games. Finally, no testimony or proof presented that indicates that alcohol abuse is an issue for Mr. G. at this time. To the contrary, Mr. G. credibly testified that he drinks only very occasionally and does not consume alcohol when he is with his son.
Based on the foregoing, the court finds that it would be in Tylor's best interest to reinstate visitation. Continuation of the suspension of visitation is unnecessary to Tylor's safety and well-being and would serve only to damage Tylor's relationship with his father at a critical stage in Tylor's life. The following order is designed to strengthen that relationship. Regular visitation will allow Mr. G. to be more involved with his son's life and medical care. In light of Tylor's disability, Tylor will require the support and encouragement both his parents if he is to have a normal a life.
Therefore, it is
ORDERED that the petition of David G. to modify the prior order of November 16, 2005 is granted and the cross-petition of Michelle G. is dismissed, and it is further
ORDERED that effective immediately visitation between David G. and his son Tylor G., born August 20, 1997, shall occur every other weekend from Saturday at 10:00 a.m. until Sunday at 5:00 p.m. For the first six months, the overnight portions of the visitation shall occur in the presence of Heidi Sutherland or another person approved by both parents. Visitation, other than the overnight portion, shall be unsupervised. If no supervisor is available, then unsupervised visitation shall occur every other weekend on Saturday from 10:00 a.m. until 5:00 p.m. and Sunday from 10:00 a.m. until 5:00 p.m. Visitation may occur at any location selected by Mr. G., however, if visitation occurs outside of Monroe County Mr. G. shall inform Ms. G. of the location and provide contact information. Mr. G. shall have the right to attend all of Tylor's school and other activities, and it is further
ORDERED that after six months all visitation shall become unsupervised and an [*5]additional visit shall occur every Wednesday evening or another evening as agreed by the parties taking into account Tylor's schedule between 5:00 and 8:00 p.m., and it is further
ORDERED the holiday schedule contained in the August 17, 2001 order shall be in effect. Beginning in 2008, the schedule for Mr. G.'s extended visitation contained in that order shall be in effect. Mr. G. shall not have extended visitation during the summer of 2007, and it is further
ORDERED that the provision of the August 17, 2001 order directing that Mr. G. attend the MEN'S Workshop is deleted, as is the order that the parties attend the ACT program. The court recommends that the parents attend ACT. If they have previously attended ACT, it is recommended that they attend once again with the aim of improving their communication skills regarding their son. The court also recommends that both parents communicate with Tylor's medical providers and each other regarding Tylor's medical needs and care. All other provisions of the August 17, 2001 order not inconsistent with this order are continued.
Tylor loves both of his parents. As he grows older and faces future surgeries related to Ollier's Disease, Tylor will surely need the encouragement of his mother and father. The risks and benefits of any activity will need to be balanced with Tylor's medical needs to reduce the risk of fractures. However, Tylor cannot be protected from all risks. Especially, as Tylor approaches adolescence, the parties will need to involve Tylor in decisions about his life. In order to do that effectively, the parents are encouraged to set aside their differences and focus on the best interests of their extraordinary son.
This shall constitute the Order and Decision of the Court.
Signed at Rochester, New York on the 25th day of June, 2007.
________________________________Joan S. Kohout
Family Court Judge
Footnotes

Footnote 1:Ollier's Disease has been described as "a rare disorder of the skeletal system which produces multiple benign cartilaginous lesions, leaving the bones brittle and susceptible to breakage"(Watkins v. Hospital of the University of Pennsylvania, 1999 PA Super 181, 737 A.2d 263)